UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
Arias Resource Capital Management LP,            :
                                                 :
                        Plaintiff,               :
                                                 :    Civil Action No.: 18-10526 _____
             -against-                           :
                                                 :
Appian Capital Advisory, LLP,                    :    **COMPLAINT**
                                                 :
                        Defendant.               :
                                                 :
-------------------------------------------------------------x

        Arias Resource Capital Management LP ("ARCM"), by its attorneys Schulte Roth & Zabel LLP, hereby submits this Complaint against Defendant Appian Capital Advisory, LLP ("Appian") alleging as follows:

### Nature of the Claim

        1.    ARCM brings this action for violation of the Lanham Act (also known as the Trademark Act of 1946), the Defend Trade Secrets Act of 2016, and for tortious interference with contract, misappropriation of trade secrets, and unfair competition.  This action arises from Appian's ongoing and persistent communications in connection with Appian's marketing efforts regarding its employee, Guillermo Kaelin ("Kaelin"), and his role at, and contribution to, ARCM while Kaelin was employed by ARCM.  Appian has refused to remedy false and misleading communications regarding Kaelin's role at, and contribution to, ARCM while employed there, despite ARCM's requests to correct the communications.  ARCM is seeking, *inter alia*, damages, including statutory awards under the Defend Trade Secrets Act, and permanent injunctive relief.

**The Parties**

2. ARCM is a Delaware limited partnership, which maintains its principal office at 17 State Street, Suite 2320, New York, New York 10004.

3. Appian is a United Kingdom limited liability partnership, which maintains its principal office at 23 King Street, 1st Floor, London SW1Y 6QY.

**Jurisdiction**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this action arises under (1) the Lanham Act (15 U.S.C. § 1125), and (2) the Defend Trade Secrets Act (18 U.S.C. § 1836).

5. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because ARCM and Appian are diverse parties—ARCM is domiciled in New York and Appian is domiciled in the United Kingdom—and the amount in controversy exceeds $75,000.

6. This Court has supplemental jurisdiction over ARCM's claims for tortious interference with contract, misappropriation of trade secrets, and unfair competition pursuant to 28 U.S.C. § 1367 as these claims are so related to ARCM's federal claims that they form part of the same case or controversy.

7. This Court has personal jurisdiction over Appian in this action because the requirements of Rule 4(k)(2) of the Federal Rules of Civil Procedure ("FRCP") are met.

8. ARCM's claims arise under federal law.

9. Appian has sufficient minimum contacts with the United States as a whole.

10. Appian's contacts with the United States are both continuous and systematic.

11. Appian is marketing its investment products and services in the United States. Appian has, through its affiliated investment funds, offered and sold more than $100 million dollars in securities in the United States according to Appian's four separate "Notice of Exempt Offering of Securities" filings with the Securities and Exchange Commission for its funds—Appian Natural Resources Funds—in 2011, 2013, and two in 2017.

12. Appian has also enlisted Mercury Capital Advisors, a Delaware Limited Liability Corporation, to assist Appian in fundraising in the United States, and as a "Sales Compensation Recipient" of Appian's securities in 2011 and 2013.

13. Appian additionally employs United States resident, JP Asalgado as its "Senior Mining Engineer." Asalgado is, upon information and belief, an officer of Appian.

## Venue

14. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(3) and (c)(2) because Appian is subject to this Court's personal jurisdiction with respect to this action.

## Factual Background

### ARCM's Business

15. ARCM was formed on April 25, 2007.

16. ARCM operates specialized private equity funds in the mining industry, in which, on behalf of its clients, it pursues investments in metals and mining companies that ARCM believes are good candidates for growth. ARCM looks for companies around the world, with a special focus on Latin America, that it determines have untapped economic potential.

17. ARCM invests primarily in metals and mining companies in South America.

18. ARCM is the market leader in mining-specialized private equity funds operating in South America, where it has been investing for over a decade.

19. J. Alberto Arias ("Arias") is the founder, President, and sole Portfolio Manager of ARCM.

20. Arias manages ARCM's funds and its investments.

21. Arias has, at all times, had the sole decision-making power with respect to ARCM's investment and operations.

22. Arias is regarded as a mining and metals industry expert having been ranked number one for Latin American metals and mining equity research for five years in a row from 1995 to 2000 (ranked by Institutional Investor, Greenwich Associates, Latin Finance, and Reuters) and he represents the third-generation of his family that has managed mining companies in Peru.

23. Arias' work experience includes more than 25 years of investment-related experience in the metals and mining industry. Prior to forming ARCM, Arias was a Managing Director with Goldman Sachs focused solely on mining and metals equity research globally and he holds an MBA in Finance and International Business from Columbia Business School, an M.S. Mining Engineering, an M.S. in Chemical Metallurgy/ Extractive Metallurgy from Columbia University Henry Krumb School of Mines and a B.S. in Metallurgical Engineering from Colorado School of Mines. Arias has established an extensive network of mining industry investors.

24. Upon information and belief, ARCM is the only mining-specialized private equity firm to have received seed capital from the Ospraie Wingspan Platform, a hedge fund that invested in promising firms and funds.

25. ARCM's success has led other mining-specialized private equity funds to prioritize investing in South America.

26. ARCM derives independent economic value from the nonpublic, undisclosed nature of its confidential and proprietary information and trade secrets.

27. ARCM's confidential information remaining confidential is imperative to sustain its funds' competitiveness in the mining-specialized private equity market.

28. The disclosure of such information damages and/or threatens to damage ARCM's ability to carry out its investment strategies and its ability to fundraise, by giving its competitors insight into its private, strategic data.

**Guillermo Kaelin's Employment with ARCM**

29. Kaelin became employed by ARCM on February 6, 2008 following two (2) years as an associate in JP Morgan Securities' investment banking division in New York.

30. Pursuant to an employment agreement dated February 6, 2008 (the "Kaelin Employment Agreement"), Kaelin served as Vice President with ARCM from 2008-2011.

31. From 2012-2014, Kaelin served as a Managing Director with ARCM.

32. Kaelin assisted primarily with ARCM's investment projects in South America.

33. Kaelin reported directly to Arias.

34. Kaelin never maintained signing or decision-making authority to bind ARCM or the funds it manages.

35. Due to Kaelin's position at ARCM, Kaelin obtained access and exposure to ARCM's highly confidential, sensitive information and trade secrets regarding, *inter alia*, ARCM's investment strategies, tools, performance, projects, and its investors and clients.

36. By signing the Kaelin Employment Agreement, Kaelin agreed to adhere to certain restrictive covenants during and after his employment with ARCM.

37. Section 5 of the Kaelin Employment Agreement described "confidential information" as including, in relevant part, "nonpublic information concerning (ARCM's) organization, operations . . . financial affairs, net asset values, investment and trading performance, philosophies, strategies and techniques, structure, products . . . valuation models and analysis . . . portfolio composition . . . and client and investor lists . . . " ("ARCM's Confidential Information").

38. Under Section 5 of the Kaelin Employment Agreement, Kaelin agreed that during and after his employment he would not use or reveal any of ARCM's Confidential Information except for ARCM's business purposes.

39. Kaelin further agreed in Section 5 of the Kaelin Employment Agreement that this information could only be divulged with the written consent of ARCM.

40. Section 5 of the Kaelin Employment Agreement permitted Kaelin to provide future employers with his job title, dates of employment, the restrictive covenants contained in Sections 5, 6, 7, 8, and 9 of the Kaelin Employment Agreement, as well as "information typically disclosed on a resume; provided (Kaelin) shall not disclose his investment performance record with (ARCM) . . . to third parties, including future employers."

41. On September 8, 2014, Kaelin signed a separation agreement with ARCM (the "Kaelin Separation Agreement").

42. In Section 4 of the Kaelin Separation Agreement, Kaelin agreed to a "Continuing Obligation" provision in which Kaelin reaffirmed his duty, among others, to adhere to the Kaelin Employment Agreement's confidentiality provisions, following the termination of his employment with ARCM.

43. Section 4 of the Kaelin Separation Agreement permits Kaelin to inform his future employers of the Kaelin Separation Agreement and the continuing obligations he is bound by under it.

44. Kaelin's employment with ARCM terminated effective on June 29, 2015.

## Appian's Business

45. Like ARCM, Appian operates mining-specialized private equity funds.

46. Appian closed its first fund to new investors in 2014.

47. Appian engages in the same investment activities as ARCM, and it competes directly with ARCM over the same pool of investment targets, investors and capital.

48. The pool of investment targets and investors in South America is relatively small, with an increasing number of mining-specialized private equity funds, like Appian, entering the field, resulting in an acute competition among the funds.

49. Appian's website is publically accessible, including to investors, who may read Appian's marketing materials.

50. Appian is investing substantially in South America. According to its website, Appian has successfully supported five mines, three of which are in South America.

51. In addition, according to Appian's website, two of its six offices are located in South America, whereas, in Europe, Africa, and North America it has no more than one office in each.

### Kaelin Joins Appian

52. Upon information and belief, Kaelin began working at Appian shortly after his employment with ARCM terminated.

53. Upon information and belief, Kaelin's position and duties with Appian include many of the same duties he had at ARCM.

54. Upon information and belief, Appian was aware of the Kaelin Employment Agreement and Kaelin Separation Agreement between ARCM and Kaelin when it hired Kaelin.

55. According to Appian's website, Kaelin is a "Managing Partner of Appian Capital Advisory. (Kaelin) is based between both London and Peru."

### Appian's Misappropriation of ARCM's Confidential Information and Trade Secrets and Appian's Misrepresentations Concerning ARCM in Connection with Kaelin

56. According to Appian's website, Kaelin, while employed at ARCM, was "Managing Director of Arias Resource Capital where he was principally responsible for deal sourcing, resulting in 20 investments ranging from US$10-$85 m(illion) and deploying over US$600 m(illion)."

57. This communication is false and misleading as it falsely indicates that ARCM's track record and investment success was attributable to Kaelin.

58. Arias has at all times had sole authority over ARCM's investments, portfolio decisions, and execution.

59. Appian has misappropriated ARCM's track record by attributing ARCM's investment performance (e.g. quantity, size range, and total amount invested) to Kaelin, and suggesting that similar success will only be enjoyed by investing with Appian when in fact Kaelin never held signing or decision-making authority with ARCM, nor did Kaelin source the most successful ARCM investments, which include the investments referenced on the Appian website.

60. In disseminating this information, Appian and Kaelin have disclosed information pertaining to ARCM's confidential investment strategy, delegation of decision-making authority and performance, and have done so in a misleading way.

61. Such information is ARCM's Confidential Information, which is what the Kaelin Employment Agreement and Kaelin Separation Agreement addressed and prohibited Kaelin from disseminating.

62. ARCM does not publicly disclose its strategies, investment performances, including the quantity and amounts invested.

63. This information, as part of ARCM's Confidential Information and trade secrets, is kept strictly confidential.

64. Upon information and belief, Appian is using ARCM's Confidential Information in connection with its marketing and fundraising efforts for a forthcoming fund vehicle.

65. ARCM has not authorized or consented to Kaelin's or Appian's use or disclosure of ARCM's Confidential Information.

66. ARCM discovered Appian's publication of ARCM's Confidential Information on Appian's website in August, 2018.

67. Upon discovery, ARCM promptly sent a letter to Appian on August 15, 2018 (the "August 15 Letter"), advising Appian of Kaelin's continuing duty of confidentiality to ARCM and that Appian has "confidential and false and misleading information posted on [its] website regarding Guillermo Kaelin and his prior association with Arias (ARCM)."

68. In the August 15 Letter, ARCM demanded that Appian revise Kaelin's biography on its website so that ARCM's Confidential Information is removed.

69. Through the August 15 Letter, if not earlier, Appian was informed and aware of the Kaelin Employment Agreement and Kaelin Separation Agreement, the confidentiality and non-disclosure provisions that continued to bind Kaelin therein, and the false and misleading nature of Appian's description of Kaelin's role while at ARCM.

70. On August 31, 2018, Appian responded to ARCM's August 15 Letter and refused to comply with ARCM's demands.

71. Following subsequent correspondence, wherein ARCM reiterated its demands, Appian has continued, and continues, to refuse to remove ARCM's Confidential Information and the misleading representations concerning Kaelin from its website.

**As and For the First Cause of Action Against Appian**
(For False and Misleading Representation of Fact/Lanham Act Violation 15 U.S.C. § 1125)

72. ARCM repeats and realleges each and every allegation set forth in Paragraphs 1 through 71 with the same force and effect as if fully set forth here.

73. Appian violated the false advertising provision of the Lanham Act, when it published on its website, and refused to remove after ARCM's demands, the false and misleading information relating to Kaelin's employment and role with ARCM.

74. This information is (1) a false and misleading statement of fact; (2) likely to confuse and/or deceive potential investors; (3) material in its effect on investing decisions; (4)

connected with interstate commerce as a result of Appian publishing it on its globally-accessible website, and (5) damaging or likely to damage ARCM through, in part, causing a diversion of investments from ARCM to Appian.

75. Appian's false publication regarding Kaelin's role and employment with ARCM misleads potential investors, which ARCM and Appian directly compete for, and falsely suggests that ARCM's investment success, which is in fact attributable to Arias, is attributable to Kaelin.

76. This false and misleading information communicated to investors that they will achieve the success of ARCM by investing with Appian now that Appian employs Kaelin.

77. As a result of Appian's false advertising, ARCM has suffered damages, including reputational harm, in excess of $75,000.

**As and For the Second Cause of Action Against Appian**
(Misappropriation of Confidential Information and Trade Secrets/Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA")

78. ARCM hereby repeats and realleges each and every allegation set forth in Paragraphs 1 through 77 with the same force and effect as if fully set forth here.

79. Kaelin is bound by the DTSA from disclosing ARCM's Confidential Information and trade secrets.

80. Appian violated the DTSA because (1) it misappropriated ARCM's Confidential Information and trade secrets when it accepted, from Kaelin, and subsequently published, nonpublic information pertaining to ARCM's investment strategy, its investment performance, and Kaelin's role with ARCM; (2) ARCM's Confidential Information and trade secrets are related to a service—ARCM's investing practices—that is (3) intended for use in interstate or foreign commerce.

81. Appian, even after being advised by ARCM in the August 15 Letter that ARCM's Confidential Information and trade secrets regarding its investment performance and strategy had been published on Appian's website, refused, and continues to refuse, to modify or correct its website.

82. The DTSA recognizes the protection of a company's trade secrets against actual or threatened misappropriation, and provides that actual or threatened misappropriation may be enjoined and that damages may be awarded.

83. The DTSA permits an award of damages up to two times the compensatory damages in "exemplary damages" as well as the prevailing party's attorney's fees, when the guilty party willfully and maliciously misappropriated the prevailing party's trade secrets. (18 U.S.C. § 1836(b)(3)(B)).

84. ARCM has taken reasonable measures to maintain the secrecy of its investment information, including the information Appian misappropriated, by, among other efforts, limiting the persons to whom such information is available and having employees enter into confidentiality agreements.

85. Appian's conduct in the publication and continued use of ARCM's Confidential Information and trade secrets constitutes actual or threatened misappropriation, misuse, and/or inevitable reliance on ARCM's Confidential Information and trade secrets.

86. Unless Appian is enjoined from utilizing ARCM's Confidential Information, ARCM will continue to suffer harm because Appian, ARCM's direct competitor, has received and is currently publishing ARCM's Confidential Information and trade secrets.

87. Appian can use such information, in competition with ARCM, to its economic advantage and to ARCM's detriment.

88. As a result of Appian's willful and malicious misappropriation and use of ARCM's Confidential Information and trade secrets, (i) Appian will derive an unfair commercial advantage and can obtain economic value from using ARCM's Confidential Information and trade secrets, and (ii) ARCM has suffered, and will continue to suffer damages, including reputational harm, in excess of $75,000.

### As and For the Third Cause of Action Against Appian
(Tortious Interference with Contract)

89. ARCM hereby repeats and realleges each and every allegation set forth in Paragraphs 1 through 88 with the same force and effect as if fully set forth here.

90. Appian tortiously interfered with ARCM's contract with Kaelin because (1) a valid contract existed between ARCM and Kaelin; (2) Appian was advised of the existence and pertinent terms of the contract in the August 15 Letter, if not earlier; (3) Appian intentionally procured the breach of the contract without justification, when it accepted, and subsequently published and refused to modify or remove ARCM's Confidential Information from its website; (4) the contract was actually breached by Kaelin and Appian's conduct; and (5) ARCM has been damaged by the breach.

91. Appian, through the August 15 Letter, was put on notice of the Kaelin Employment Agreement and the Kaelin Separation Agreement, as well as the confidentiality terms that bind Kaelin, and how the text on its website violates Kaelin's aforementioned contracts with ARCM, and still Appian continues to publish ARCM's Confidential Information in violation of the Kaelin Employment Agreement and the Kaelin Separation Agreement. Appian has therefore intentionally interfered with and procured the breach of ARCM's contracts with Kaelin.

92. As a result of Appian's acts, ARCM has suffered, and will continue to suffer damages, including reputational harm, in excess of $75,000.

### As and For the Fourth Cause of Action Against Appian
(Misappropriation of Trade Secrets)

93. ARCM hereby repeats and realleges each and every allegation set forth in Paragraphs 1 through 92 with the same force and effect as if fully set forth here.

94. Appian misappropriated ARCM's trade secrets because (1) ARCM possessed trade secrets, and (2) Appian is using these trade secrets in breach of an agreement.

95. ARCM's investment strategy, performance, and specific track record qualify as trade secrets because they are nonpublic compilations of information, developed and maintained by ARCM over years of experience, and used in ARCM's business to provide it with an advantage over its competitors who are unaware of such information.

96. Appian is using ARCM's trade secrets to bolster its marketing portfolio by publishing ARCM's trade secrets on its website and attributing ARCM's track record and investment performance to its employee Kaelin, in direct violation of the Kaelin Employment Agreement and the Kaelin Separation Agreement.

97. Appian continues to publish ARCM's trade secrets even after being advised by the August 15 Letter of the confidentiality agreements Kaelin, and by extension Appian, breached in publishing ARCM's trade secrets.

98. As a result of Appian's acts, ARCM has suffered, and will continue to suffer damages, including reputational harm, in excess of $75,000.

### As and For the Fifth Cause of Action Against Appian
(Unfair Competition)

99. ARCM hereby repeats and realleges each and every allegation set forth in Paragraphs 1 through 98 with the same force and effect as if fully set forth here.

100. Appian engaged in unfair competition in violation of ARCM's rights because it, in bad faith, misappropriated ARCM's track record and investment performance and publically attributed such information to itself, which has caused or will likely cause the public to confuse ARCM's work for Appian's work.

101. Investors, engaged in due diligence, will likely review funds' descriptions of their personnel and prior performance before choosing where to invest. Appian attributing ARCM's investment track record to Kaelin, its current employee, will cause investors to believe ARCM's track record and investment performance was produced by Kaelin, and that now, such results can only be attained through investing with Appian when in fact Kaelin never held signing or decision-making authority with ARCM, nor did Kaelin source the most successful ARCM investments, which include the investments referenced on the Appian website.

102. Appian's misappropriation of ARCM's Confidential Information is an attempt to foment confusion and profit from ARCM's efforts and success in the mining-specialized private equity fund market at the expense of ARCM.

103. Appian has refused to remove ARCM's Confidential Information from its website, despite several demands by ARCM.

104. As a result of Appian's acts, ARCM has suffered, and will continue to suffer damages, including reputational harm, in excess of $75,000.

**Prayer for Relief**

**WHEREFORE**, ARCM respectfully requests the following judgment in favor of ARCM and against Appian:

105. awarding ARCM compensatory damages, including for reputational harm, in an amount to be determined at trial, but no less than $75,000.

106. awarding ARCM exemplary damages of two times the compensatory damages and its attorneys' fees for Appian's willful and malicious violation of the Defend Trade Secrets Act.

107. enjoining and restraining Appian and its affiliates from obtaining, using, or disclosing ARCM's Confidential Information or trade secrets.

108. Awarding ARCM such further relief as the Court deems just and proper.

Dated: New York, New York
November 13, 2018

SCHULTE ROTH & ZABEL LLP

By: /s/ Holly H. Weiss
Holly H Weiss
Max Garfield
919 Third Avenue
New York, NY 10022
holly.weiss@srz.com
max.garfield@srz.com

*Attorneys for Arias Resource Capital Management LP*