# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

601 Lexington Avenue
New York, NY 10022
United States

Atif Khawaja, P.C.
To Call Writer Directly:
+1 212 446 4749
atif.khawaja@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

January 25, 2019

**VIA ECF**

The Honorable P. Kevin Castel
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

Re:   *Arias Res. Capital Mgmt. LP v. Appian Capital Advisory, LLP*,
      No. 18-cv-10526 (PKC) (S.D.N.Y.)

Dear Judge Castel:

We represent Appian Capital Advisory, LLP ("Appian") in connection with the Complaint filed on November 13, 2018[1] by Arias Resource Capital Management LP ("Arias" or "Plaintiff"). Pursuant to this Court's Individual Rule 3(A), Appian submits this pre-motion letter setting forth in detail the legal and factual bases for an anticipated motion to dismiss. In advance of the initial pretrial conference scheduled for February 11, 2019, Appian respectfully proposes a 45 day/45 day/21 day briefing schedule for its anticipated motion.

The Complaint is a thinly-veiled attempt to derail the success of Appian by haling it—a U.K.-based investment firm with no U.S. offices or employees—into U.S. court to defend against meritless claims. The Complaint is premised on a single statement on Appian's U.K.-based website, a short and general description of Appian Managing Partner Guillermo Kaelin's title and responsibilities as a Manager Director during his previous tenure at Arias:

> "Prior to joining Appian, Guillermo was Managing Director of Arias Resource Capital (mining private equity fund) where he was principally responsible for deal sourcing, resulting in 20 investments ranging from US$10-$85m and deploying over US$600m."[2]

Lest there be any doubt, Plaintiff concedes that Mr. Kaelin was employed at Arias in 2008,

---

[1]  (Dkt. No. 1) ("Complaint" or "Compl.").

[2]  Guillermo Kaelin - Appian Capital Advisory LLP, *available at*: https://appiancapitaladvisory.com/team/the-appian-team/guillermo-kaelin/, last accessed January 24, 2019; *see also* Compl. ¶ 56.

# KIRKLAND & ELLIS LLP

Honorable P. Kevin Castel
January 25, 2019
Page 2

served as its Managing Director, and principally focused on investments in South America. (Compl. ¶¶ 29-32.) The dispute thus concerns the balance of that statement: whether Mr. Kaelin was "principally responsible for deal sourcing, resulting in 20 investments ranging from US$10 $85m and deploying over US$600m." To be sure, Mr. Kaelin's employment agreement with Arias specifically permits him to disclose "information typically disclosed on a resume" (Compl. ¶ 40), and permits him to disclose information that Arias "disclose[d] to the general public,"[3] which is precisely the information disclosed on Appian's website.[4]

Plaintiff nonetheless now alleges that Appian (1) engaged in false advertising in violation of the Lanham Act, 15 U.S.C. § 1125, (2) violated the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), and (3) committed three common law torts: misappropriation of trade secrets, unfair competition, and tortious interference. The Complaint should be dismissed because Appian is not subject to personal jurisdiction, extraterritorial application of those federal statutes is inappropriate here, and Plaintiff's claims fail as a matter of law.

I.   **The Complaint Should Be Dismissed for Lack of Personal Jurisdiction.**

As a gating issue, the Complaint should be dismissed because Plaintiff has not and cannot establish personal jurisdiction. At this stage, Plaintiff must make a "prima facie case of personal jurisdiction" with some "factual specificity," and cannot rely on "conclusory assertions alone." *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014). Specifically, Plaintiff must allege, *inter alia*, a statutory basis for personal jurisdiction, and that the exercise of personal jurisdiction comports with constitutional due process. *See, e.g., Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 326-27 (2d Cir. 2016). Plaintiff fails to carry its burden, as it has not alleged any plausible theory of personal jurisdiction over Appian, a U.K. entity, for a single challenged statement with no relationship to the U.S.

Plaintiff has failed to plead the bases of its jurisdictional claim. Federal Rule of Civil Procedure 4(k)(2) requires allegations, *inter alia*, that Appian is "not subject to jurisdiction in any state's court of general jurisdiction." The Complaint makes no such allegation (Compl. ¶¶ 7-13), and its generic recitation of boilerplate—that Appian "has sufficient minimum contacts with the United States" that are "continuous and systematic"—cannot satisfy its pleading burden. *See, e.g., 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31,

---

[3]   While this language was not quoted in the Complaint, the Court may nevertheless consider the full Agreement in resolving Appian's motion to dismiss, as it is fundamental to Plaintiff's claims. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 273 (2d Cir. 2013).

[4]   *See* supra n.2.

## KIRKLAND & ELLIS LLP

Honorable P. Kevin Castel
January 25, 2019
Page 3

2015).

To the extent Plaintiff invoked general jurisdiction under Rule 4(k)(2)—*i.e.*, permitting Appian to be sued in *any* U.S. federal court for *any* purported misconduct—Plaintiff fails.  General jurisdiction is appropriate only where Appian's contacts are "so continuous and systematic as to render [it] essentially at home" in the U.S.  *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014).  That is not possible here, as Plaintiff concedes that Appian is organized under U.K. law and has its principal place of business in the U.K.  (Compl. ¶ 3); *see Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (corporate defendants generally are only "essentially at home" where they are incorporated or maintain their principal place of business).  Plaintiff also cannot satisfy the "heavy burden" of establishing this matter as an "exceptional case" warranting general jurisdiction over an entity not domiciled in the U.S.  *Id.*[5]

Plaintiff's attempt at establishing specific jurisdiction fares no better.  Not only does the Complaint not plead specific jurisdiction, the facts pleaded about Appian's alleged U.S. contacts are unrelated to the website statement at issue concerning Mr. Kaelin's former employment.  To establish specific jurisdiction, Plaintiff must show that Appian's "in-state activity [] '*gave rise to the episode-in-suit.*'"  *Waldman*, 835 F.3d at 331 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)) (emphasis in original).  The Complaint does not tie Appian's purported U.S. contacts to the U.K. website at issue.  Nor could they, as foreign, passive websites accessible anywhere in the world do not give rise to sufficient contacts that satisfy due process.  *See, e.g.*, *Aqua Prods., Inc. v. Smartpool, Inc.*, 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005).  Because Plaintiff failed to allege sufficient minimum contacts with the U.S., the Complaint must be dismissed.

Even if Plaintiff had alleged sufficient minimum contacts—which it has not—this Court should dismiss the Complaint because the exercise of personal jurisdiction over Appian would be inconsistent with traditional notions of fair play and substantial justice.  Requiring Appian "to defend the suit away from its home" would be "too great and unreasonable a burden on [Appian]

---

[5]   Unsurprisingly, Plaintiff's allegations fail to show that Appian is "essentially at home" in the U.S.  *First*, Plaintiff alleges that "Appian is marketing its investment products and services in the United States," and cites to four securities offerings occurring in 2011, 2013, and 2017.  (Compl. ¶ 11.)  Marketing and selling investment products, however, is an insufficient basis to exercise general jurisdiction.  *See, e.g.*, *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014).  *Second*, Plaintiff alleges that Appian retained Mercury Capital Advisors LLC "to assist Appian in fundraising in the United States." (Compl. ¶ 12.)  But merely retaining a U.S.-based company does not provide a basis to exercise general personal jurisdiction.  *See, e.g.*, *DeLorenzo v. Viceroy Hotel Grp., LLC, et al.*, 2018 WL 6131489, at *2 (2d Cir. Nov. 21, 2018).  *Third*, Plaintiff alleges that Appian employs one U.S. resident.  (Compl. ¶ 13.)  Even accepting the allegation that JP Asalgado is an Appian employee—although, in fact, he is not an employee, but a consultant—the presence of employees with no connection to Plaintiff's claims is insufficient as a matter of law.  *See Brown*, 814 F.3d at 629.

**KIRKLAND & ELLIS LLP**

Honorable P. Kevin Castel
January 25, 2019
Page 4

to comport with due process." *Int'l Shoe Co.*, 326 U.S. at 317. Appian is a U.K.-based entity (Compl. ¶ 3), with no offices, operations, employees, executives, or directors in the U.S., and nearly all employees based in London. Exercising personal jurisdiction over Appian would impose "unique burdens" by forcing Appian to defend itself "in a foreign legal system"—considerations that are entitled to "significant weight." *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.*, 480 U.S. 102, 114 (1987). Moreover, the challenged conduct occurred in the U.K., on a U.K.-hosted website that can be accessed anywhere. Notably, Appian's website includes express terms explaining that disputes arising out of the website are governed by English law and subject to the exclusive jurisdiction of the courts of England and Wales,[6] giving the U.S. little, if any, interest in adjudicating this action. Under these circumstances, the exercise of personal jurisdiction would be unreasonable, and the Complaint should be dismissed.

**II.     The Complaint Should Be Dismissed Because the Lanham Act and DTSA Do Not Apply Extraterritorially Here, and Plaintiff's Common Law Claims Cannot Stand On Their Own.**

Even if Plaintiff could establish personal jurisdiction, its statutory claims could not extend to the conduct at issue here, which occurred outside the United States. U.S. law "is meant to apply only within the territorial jurisdiction of the United States," unless there is a "clear indication" in the statute providing for extraterritorial application of that law. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). Here, the Lanham Act claim that Plaintiff asserts does not apply to Appian because it is not a U.S. citizen (Compl. ¶ 3), and Plaintiff fails to allege—and cannot reasonably claim—that Appian's website has a "substantial effect" on U.S. commerce. *See, e.g.*, *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 830 (2d Cir. 1994) (affirming that the Lanham Act does not reach defendants' activities because none was a U.S. citizen and plaintiff failed to show a substantial effect on U.S. commerce). Similarly, the DTSA does not apply because Appian is a foreign entity, and the Complaint fails to allege any act in furtherance of the purported misappropriation was committed in the United States. 18 U.S.C. § 1837; *see also Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 & n.4 (N.D. Cal. Mar. 23, 2018) (dismissing DTSA claim in part on extraterritoriality grounds, because plaintiff alleged that defendant was a foreign entity; so it was "incumbent on [plaintiff] to allege facts showing conduct within the reach of the statute").

Because the Lanham Act and the DTSA claims must be dismissed, Plaintiff cannot maintain its remaining common law claims in this Court.[7] The absence of viable federal law claims

---

[6]  *See* Appian Capital Advisory LLP - Website Terms of Use, available at https://appiancapitaladvisory.com/terms/, last accessed January 24, 2019.

[7]  The Complaint does not allege what law governs Plaintiff's common law claims. Assuming arguendo, however, that New York law applies, the common law claims should be dismissed because New York common law does

## KIRKLAND & ELLIS LLP

Honorable P. Kevin Castel
January 25, 2019
Page 5

removes the pleaded Rule 4(k)(2) basis for personal jurisdiction (Compl. ¶ 7), which by its clear terms applies only to federal claims. And Plaintiff's only basis for subject matter jurisdiction over the common law claims is predicated on supplemental jurisdiction under 28 U.S.C. § 1367. Because the federal claims must be dismissed, there can be no supplemental jurisdiction.

### III.     The Complaint Fails to State a Claim.

Finally, the Complaint should be dismissed because Plaintiff fails to state a claim for any of its five causes of action. To survive a dismissal motion, federal law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and accordingly all claims should be dismissed.

#### A.     Plaintiff Fails to State a Claim for Violation of the Lanham Act.

In order to state a false advertising claim under the Lanham Act, Plaintiff must allege, *inter alia*, that an advertisement is either literally or impliedly false. *Bd.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556, 559-60 (2d Cir. 2018). Plaintiff's Complaint fails to do either.

*First*, Plaintiff fails to allege adequately that the challenged statement on Appian's website concerning Mr. Kaelin's employment is literally false. If a statement is susceptible to "more than one reasonable interpretation, [it] cannot be literally false." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). Plaintiff claims that the recitation of Mr. Kaelin's work history falsely "indicates that ARCM's track record and investment success was attributable to Kaelin." (Compl. ¶ 57.) This is baseless. The clause referencing Mr. Kaelin's role at Arias ("he was principally responsible for deal sourcing") neither indicates nor implies that Mr. Kaelin was *solely* responsible for investments at Arias. The natural—or at least equally reasonable—interpretation is that the investments were part of Mr. Kaelin's primary job responsibilities at Arias. The remaining portion of the biography ("resulting in 20 investments ranging from US$10-$85m and deploying over US$600m") is not a "track record," and does not concern "investment success" (*id.* ¶ 56), because it does not discuss any individual investment or the outcome of any investment. The challenged language is not literally false in any respect.

*Second*, Plaintiff fails to allege that Appian's statement is implicitly false. Where plaintiffs rely on a theory of implicit falsity, the court "*must* rely on extrinsic evidence of consumer deception or confusion to support a finding of an implicitly false message." *Time Warner Cable, Inc.*, 497 F.3d at 153 (emphasis in original). Importantly, "[a]t the pleading stage, the plaintiff

---

not apply extraterritorially to the very same conduct that is beyond the reach of the Lanham Act and the DTSA. *See, e.g., World Book, Inc. v. Int'l Bus. Machines Corp.*, 354 F. Supp. 2d 451, 455 (S.D.N.Y. 2005).

KIRKLAND & ELLIS LLP

Honorable P. Kevin Castel
January 25, 2019
Page 6

must allege that consumers or retailers were misled or confused by the challenged advertisement and '*offer facts* to support that claim.'" *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (emphasis in original).  Like the plaintiff in *Lokai Holdings*, Plaintiff fails to allege any facts supporting the conclusory allegation that Appian's statement misled or confused potential investors, and for the same reasons, its Lanham Act claim should be dismissed with prejudice.  *Id.*[8]

   B. <u>Plaintiff's Misappropriation of Trade Secrets Claims Fail.</u>

  To state a claim for misappropriation of trade secrets, "a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *MediData Solutions, Inc., et al. v. Veeva Sys. Inc.*, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018).[9]  Here, Plaintiff does not allege any actual trade secret, the alleged "trade secrets" are consistent with public information, and Plaintiff fails to allege Appian misappropriated anything.

  *First*, Plaintiff does not allege any protected trade secret.  Plaintiff must "put forth specific allegations as to the information owned and its value." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) (dismissing misappropriation claims where plaintiff failed to allege information more than merely confidential).  Here, Plaintiff does not come close to alleging sufficient facts to describe any trade secret.  What Plaintiff alleges—"strategies, investment performances, including the quantity and amounts invested" (Compl. ¶ 62)[10]—are merely categories of allegedly confidential information.  This is plainly insufficient.  *Elsevier*, 2018 WL 557906, at *6.

  *Second*, Plaintiff has already disclosed publicly available information that is consistent with everything disclosed on Appian's website.  For a trade secret to be protected, it cannot be information readily available from public sources.  18 U.S.C. § 1839(3); *see also Alexander*

---

[8] This claim also fails because the statement on Appian's website is not a "commercial advertise[ment] or promotion," 15 U.S.C. § 1125(a), and Plaintiff has alleged no facts showing that it is entitled to monetary relief.  "To seek monetary relief under the Lanham Act, [Plaintiff] must allege actual damages that were causally related to actual consumer confusion or deception of the purchasing public." *Impax Media, Inc. v. Northeast Advert. Corp.*, 2018 WL 3962841, at *10 (S.D.N.Y. Aug. 17, 2018).  Plaintiff's conclusory damages allegations are insufficient.  (Compl. ¶¶ 74-75.)

[9] The legal standard for misappropriation of trade secrets is substantially similar under New York common law and the DTSA.  *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016); *see also Medidata*, 2018 WL 6173349, at *3 n.1.

[10] Plaintiff also suggests, remarkably, that Mr. Kaelin's job responsibilities constitute a trade secret.  (Compl. ¶ 80.)  Aside from not adequately alleging the contours of this "trade secret," job responsibilities of a *former* employee do not create "independent economic value … from not being generally known." 18 U.S.C. § 1839(3)(B).

## KIRKLAND & ELLIS LLP

Honorable P. Kevin Castel
January 25, 2019
Page 7

*Interactive, Inc. v. Leisure Pro Ltd.*, 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014) (dismissing trade secrets claim in part because purported trade secrets were publicly available). Here, the information on Appian's website is consistent with publicly available information revealed through (1) public securities filings with international authorities, including SEDAR,[11] (2) Bloomberg,[12] and (3) Plaintiff's own website. For example, Plaintiff claims that Appian "ha[s] disclosed information pertaining to ARCM's confidential investment strategy" by listing on its website that Mr. Kaelin "was principally responsible for deal sourcing, resulting in 20 investments ranging from US$10-$85m and deploying over US$600m." (Compl. ¶¶ 56, 60.) But Plaintiff's own website discloses the same categories of information alleged to be a trade secret—including that Appian's "Target Equity Investment Size" is between "$5-60 million."[13] Given the public availability of information of the same nature as the challenged statement, the DTSA and common law misappropriation claims should be dismissed.[14]

   C. <u>Plaintiff Fails to State a Claim for Unfair Competition.</u>

  Plaintiff's purported "unfair competition" claim also must be dismissed. *First*, this claim is duplicative of Plaintiff's misappropriation claims, and should be dismissed for the same reasons discussed above. *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 629 (S.D.N.Y. 2014) ("An unfair competition claim can only survive dismissal of a duplicative misappropriation claim if the two rest on different factual predicates."). *Second*, Plaintiff fails to allege adequately any bad faith, as it must in order to state a claim for unfair competition. *See, e.g.*, *Bulger v. Royal Doulton, PLC*, 2006 WL 3771016, at *8 (S.D.N.Y. Dec. 19, 2006) (dismissing New York unfair competition where plaintiff's bad faith allegations were conclusory); *LoPresti v. Massachusetts Mut. Life Ins.*

---

[11] SEDAR is the official website providing access to public securities documents filed by issuers with Canadian regulatory authorities. The Court may take judicial notice of securities filings (and Arias's website and Bloomberg profile) to establish that the information therein was publicly available. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008).

[12] Company Overview of Arias Resource Capital Management LP, *available at*: https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=54444135, last accessed January 24, 2019 ("Arias … seeks to invest in companies in metals and mining sector … with special focus on Latin America. The firm invests $5 million to $60 million in its target companies.").

[13] *See* Arias Resource Capital Management LP - Investment Strategy, *available at:* http://www.arc-fund.com/investment-strategy/, last accessed January 24, 2019 ("Target Equity Investment Size: $5 - $60 million ... Geographic Focus: Global Markets with special focus on Latin America.").

[14] Plaintiff further fails to allege that Appian engaged in any "misappropriation." Under the DTSA, Plaintiff must allege that Appian "used improper means to acquire the secret," or "had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Elsevier*, 2018 WL 557906, at *4. The Complaint is wholly devoid of any allegations sufficient to satisfy this requirement.

## KIRKLAND & ELLIS LLP

Honorable P. Kevin Castel
January 25, 2019
Page 8

*Co.*, 30 A.D.3d 474, 476, 820 N.Y.S.2d 275, 277 (2006) (same).  Plaintiff states in conclusory fashion only that Appian acted in "bad faith" (Compl. ¶ 100); such "threadbare recitals of the elements of a cause of action" should be disregarded.  *Iqbal*, 556 U.S. at 678.

   D. <u>Plaintiff Fails to State a Claim for Tortious Interference with Contract.</u>

  Plaintiff's tortious interference with contract claim also fails because there has been no breach of contract.  *See Lokai Holdings*, 306 F. Supp. 3d at 643.  Specifically, the Employment Agreement does not prohibit Mr. Kaelin from disclosing information that Plaintiff "chooses to disclose to the general public," and the purported confidential information here is consistent with information Plaintiff chooses to make publicly available.  The Employment Agreement also does not prohibit Mr. Kaelin from disclosing "information typically disclosed on a resume," which is exactly what Appian's website currently displays.  There has been no breach of contract, and Plaintiff's claim for tortious interference must therefore be dismissed.[15]

  For all the reasons set forth above, Appian respectfully requests leave to file a motion to dismiss the Complaint in full and with prejudice.

              Respectfully,

              */s/ Atif Khawaja*
              Atif Khawaja, P.C.

cc:  Counsel of Record

---

[15] Plaintiff's conclusory damages allegations—which do not contain a single fact about the nature of the alleged damages (Compl. ¶¶ 90, 92)—also warrant dismissal of the tortious interference claims.  *See, e.g.*, *Camp Summit of Summitville v. Visinski*, 2007 WL 1152894, at *14 (S.D.N.Y. Apr. 16, 2007) (dismissing claim for tortious interference where plaintiff raised only conclusory allegations of "immediate and irreparable harm and damage").